CARMEN RITA BLANCH DE ANNONI, Petitioner, *v.* REGISTRAR OF PROPERTY OF MAYAGÜEZ, Respondent.

No. 1096. Submitted November 3, 1941.—Decided January 16, 1942.

*Enrique Báez García* for appellant. The registrar appeared by brief.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an administrative appeal taken from a decision of the Registrar of Property of Mayagüez which reads as follows:

"Record of the foregoing instrument is denied, after examining another document and a receipt of inheritance-tax exemption, and in lieu thereof a cautionary notice has been entered for the statutory period on page 181, back, volume 291 of Mayagüez, property No. 2357, inscription letter 'X,' as it is noted (1) that, even though the holographic will executed by Rafael Blanch y Camp is valid, since the testator has omitted the institution of heirs (Sec. 693 of the Civ. Code, 1930 ed.), it can not be presumed that he had no forced heirs nor that he has instituted his sister Carmen Rita Blanch de Annoni as his sole and universal heir, to whom he bequeathed all his property (Sec. 813, Civ. Code, 1930 ed.), there having been no determination of the person or persons composing the legal succession of the testator in the proper proceeding (Sec. 875, Civ. Code in force). (2) That the legatee Carmen Rita Blanch de Annoni, can

not take possession by herself of the property devised to her, in accordance with the provisions of section 807 of said code; and said cautionary notice is entered with the curable defect of the failure to state in the documents submitted to us, or to establish in any way that the testator was of legal age at the time of the execution of the said will.''

The will referred to in said decision is as follows:

''Garage Central—Rafael Blanch—Owner—Telephone 257, Mayagüez, Puerto Rico—August 1–40. On this date there were sold on execution the shares of the daughters of Fela del Moral in a lot which I occupy for $600 and the shares of the daughters, also of Fela, in the house which formerly belonged to Doña Carmen or 2/6 shares for $300, these sales being made to Franco. Llavat, for value received, in order that I should not appear as purchasing these shares (condominio); the debt together with interest and costs amounted to $970.75 and the Succession owes a balance of $70.75 which is recorded in the district court—, and pending collection —My assignment to Llavat of the judgment, as well as of these execution sales, is simulated —The Attorney Enrique Báez whom I absolutely trust can explain it well —I hereby definitely bequeath (leyo) all my property resulting from a liquidation of my entanglements (líos) to my sister Carmen Rita Blanch de Annoni, residing in this city —Raf. Blanch —P.S. As attorney for the settlement of these matters I designate Attorney Enrique Báez García.——(Sgd.) Raf. Blanch.''

Upon that instrument being found, the interested party timely and formally applied to the proper district court for the protocolization thereof, and after the procedure provided by law had been followed, such protocolization was finally decreed by an order of July 22, 1941, the pertinent part of which reads as follows:

''. . . it holds that the identity of the above-transcribed holographic will has been proven; it also holds that the same constitutes the holographic will of Rafael Blanch y Camps; it directs that literal copies of said instrument and of the writ to which it may have given rise be issued in favor of the interested parties; it orders that the same be protocolized in the registry of Notary Enrique Báez

García; and it further directs that said instrument shall constitute sufficient title for the total or partial recording of the real property of which the inheritance may consist in the registry of property."

The protocolization was effected on the same day, July 22, in the protocol of Notary Enrique Báez García and, upon a copy of the corresponding deed being presented in the registry of property, it gave rise to the decision which we have copied at the beginning of this opinion.

In our judgment said decision must be reversed. The registrar himself admits therein that a valid will is involved, and it is so indeed.

Referring to the reforms introduced by the Civil Code in the intestate succession, Manresa in volume 5 of his *Comentarios al Código Civil Español,* 5th edition, page 273, says:

"Another one of the changes most attacked by the critics has been the adoption of the holographic will, which is now recognized by almost all systems of legislation and which has been criticized principally by reason of the possibility, which recent events have confirmed, of easy forgery or of unjust and selfish contest."

However, Manresa himself acknowledges that the holographic will served to fill an undisputed need by facilitating to a considerable degree the act of making a testamentary disposition or simplifying the drawing of a will.

What the law requires for the validity of this form of will is that the same be written in its entirety by the testator and signed by him; that it contain a statement of the year, month, and day of its execution; that it be presented to the proper court; and that after the death of the testator has been established, the court should proceed to the reading and rubrication thereof in public and require its identity to be established by the testimony of three witnesses acquainted with the handwriting and signature of the testator and who depose that they have no reasonable doubt that the will was written and signed by the testator's own hand. Sections 637 to 642 of the Civil Code, 1930 ed., pp. 141–143.

The will was thus executed and acted upon in this case, and in virtue thereof the court, in accordance with the provisions of Section 643 of the Civil Code, as amended by Act No. 48 of 1930, page 368, ordered its protocolization in the registry of a certain notary and declared that the copies thereof to be issued by the notary would constitute a sufficient title for the recording of the real property of which the estate might consist.

 Now, considering the will in itself, is it sufficient to justify the direct recording of the real property involved —a certain undivided interest in a lot recorded in the name of the testator—in favor of the heir or legatee of the whole of the inheritance, Carmen Rita Blanch widow of Annoni?

Let us see. As precedents to be followed we have a judgment of the Supreme Court of Spain and a decision of this Supreme Court of Puerto Rico.

By the first, rendered on June 8, 1918, there was held to be sufficient a will which.read as follows:

"Peñafiel, October 24, 1915. Pasicos of my heart: In this first love letter is my will, everything is for you, that you will always love me and not doubt of the love of your Matilde. Rubricated."

And by the second, rendered on May 8, 1925, *Ex parte Vázquez*, 34 P.R.R. 234, 235, there was also considered as sufficient another will reading as follows:

"Rosa: In case anything should happen to me I wish to inform you that I have taken out a life-insurance policy for $5,000 in my name in the Pan American Life Insurance Company of New Orleans, which I have had in my possession since April 6th free of encumbrance. It bears No. 8378 s. I am informing you of this because it is well for you to know it, inasmuch as you are my only unmarried sister and therefore the only heir if anything should happen to me. Say nothing about this; keep these two sheets concerning this matter and that is all."

Following the same liberal viewpoint applied in those decisions, and in furtherance of the above-mentioned reform,

we think that it can and should be concluded that the will made by Blanch is similarly sufficient.

In the first place, we think that it contains what the registrar fails to find in it, namely, a designation of heirship.

Section 616 of the Civil Code, 1930 ed., p. 139, provides that the act by which a person disposes of all his property or of a part of it, to take effect after his death, is called a will, and section 617 then provides that "the testator may dispose of his property either under title of inheritance or under that of legacy" and that "in case of doubt, even if the testator has not actually used the word 'heir,' if his will is clear on this point, his disposition shall be valid as made under a title, either universal or of inheritance."

Here the exact words of the testator were: "I hereby definitely bequeath all my property resulting from a liquidation of my entanglements (*líos*) to my sister Carmen Rita Blanch de Annoni, residing in this city."

Notwithstanding the use of the word "bequeath" (*lego*), there clearly appears from the whole of the provision the testator's intention to institute his sister as the sole heir of all his property, which is not the same thing as making a legacy in her favor of something definite and certain.

And as to the reference to a liquidation, this is in conformity with the reality and the law in any case, because, as long as any outstanding debts exist, there is no inheritance. Judgments of the Supreme Court of Spain of June 21, 1869 (20 *J. C.* 166) and of December 12, 1873 (28 *J. C.* 663).

Moreover, the declaration of heirs demanded by the registrar is not necessary, not only because the will contains a designation of heirship, but also because the testator has disposed of all his property.

We need not go into a consideration of the second ground of refusal, for proceeding as it does upon the assumption of the nonexistence of a designation of heirship in the will, it must collapse in view of the fact that such designation actually exists.

■ Lastly, in order that the facts of the case may more clearly stand out and for the purpose of passing upon the curable defect which has been noted, it seems advisable to transcribe the following recitals of the order of the court decreeing the protocolization, thus:

"Whereas, Carmen Rita Blanch de Annoni alleged that Rafael Blanch y Camps died in Mayagüez, the place of his last residence, and in which his property is located, on March 21, 1941, at eight o'clock in the evening, being unmarried at the time of his death and without leaving any legal or natural descendants or ascendants.

"Whereas, Carmen Rita Blanch de Annoni further alleged that the parents of Rita Blanch y Camps had died about the year 1888 and that the only known relatives of said Rafael Blanch y Camps are the petitioner, Carmen Rita Blanch de Annoni, and Asunción Blanch de Castelló."

If the parents of the testator died about 1888, and if from the record itself of the undivided interest involved in the name of the testator his majority appears, as it in fact does appear, there is no basis either for the curable defect noted.

■ It should be remarked that everything we have said and decided herein presupposes that the order of the court directing the protocolization of the holographic will not produce the effect of *res judicata,* as was held in the cited case of *Ex parte Vázquez, supra,* thus:

"On the other hand, as the protocolization of a holographic will is rather a matter of voluntary jurisdiction and the order for its protocolization does not produce the effect of *res judicata,* the rights of whatever lawful heirs there may be or of anybody who feels aggrieved by that order are saved and may be asserted in an ordinary action."

The decision appealed from must be reversed and the record sought ordered.

Mr. Justice Snyder took no part in the decision of this case.